## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| _____ ) | |
| RYAN DEVEREAUX, LUKAS ) | |
| HERMSMEIER, ANSGAR GRAW, ) | |
| FRANK HERRMANN, ) | |
|     Plaintiffs, ) | |
|     vs. ) | **Civil Action No.** |
| ) | |
| COUNTY OF ST. LOUIS, MISSOURI, ) | |
| ST. LOUIS COUNTY POLICE ) | **JURY TRIAL DEMANDED** |
| DEPARTMENT, ) | |
| JOHN DOE OFFICERS 1-20 ) | |
|     Defendants. ) | |
| _____ ) | |

## COMPLAINT

### Introduction

1. This is a civil rights action under 42 U.S.C. § 1983.  Plaintiffs Ryan Devereaux, Lukas Hermsmeier, Ansgar Graw, and Frank Herrmann ("Plaintiffs") – all professional journalists – seek judgment against Defendants John Doe Police Officers 1-20, St. Louis County, St. Louis County Police Department, for committing acts, under color of law, which deprived Plaintiffs of rights secured under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, the Missouri Constitution, and related state laws, as set forth below.

2. This claim arises from Plaintiffs' efforts, as journalists, to document, report on, and record the ongoing protests in Ferguson, Missouri that followed the shooting-death of Michael Brown on August 9, 2014, and the police action taken in response to those

protests.  John Doe Police Officers 1-20, intentionally and willfully subjected Plaintiffs to violations of freedom of the press and free speech, by purposefully obstructing Plaintiffs from carrying out their assignments as members of the press – assignments which include oversight of police action against citizens engaged in protest activity.  In the course of their undertakings intending to suppress Plaintiffs' First Amendment rights, John Doe Police Officers 1-20 employed means that violated Plaintiffs' right to be free from unreasonable searches and seizures, and constituted false arrest and battery under state law.

3. This unlawful conduct was undertaken with the intention of obstructing, chilling, deterring, and retaliating against Plaintiffs for engaging in constitutionally-protected speech, newsgathering, and recording of police activities.

4. Defendants St. Louis County and St. Louis County Police Department are liable for the violations of rights, false arrest, and battery.   St. Louis County and St. Louis County Police Department have ignored, condoned and/or permitted a pattern of suppression of constitutionally-protected speech, newsgathering, and recording of police activities and failed to train and supervise its officers, thus leading to the violations described herein.

5. Plaintiffs now bring this action to assure that present and future First Amendment protected activities of Plaintiffs and others will not be suppressed by Defendants, in violation of both Missouri and U.S. Constitutional guarantees.  "[An] untrammeled press [is] a vital source of public information and an informed public is the essence of working democracy." *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (U.S. 1983) (internal citation omitted) (alterations in original).

**Jurisdiction and Venue**

6. This action arises under the Constitution of the United States, the provisions of 42 U.S.C. § 1983, and Missouri law.

7. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a).

8. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in St. Louis County, Missouri.

10. Venue is proper in the Eastern Division pursuant to E.D. Mo. L.R. 2.07(A)(1).

**Parties**

11. Plaintiff Ryan Devereaux ("Devereaux") is a journalist with the Intercept/First Look Media, covering national security and criminal justice.   His work has appeared in the Guardian, RollingStone.com, the Nation, Democracy Now!, and the Village Voice, among other media outlets.  He has published several articles on the events in Ferguson, including protest activity and police action in Ferguson.  He is a U.S. citizen and intends to continue to earn a living reporting on criminal justice issues and covering the protest activity and police action in Ferguson.

12. Plaintiff Lukas Hermsmeier ("Hermsmeier") is a freelance journalist. His work has appeared in several German newspapers and magazines, including Tagesspiegel, Welt, Musikexpress, and BILD, Germany's biggest newspaper.  He is a U.S. resident and intends to continue to earn a living reporting on breaking news in the U.S., including protest activity and police action in Ferguson.

13. Plaintiff Ansgar Graw ("Graw") is the Senior Political U.S. Correspondent for Die Welt and Welt am Sonntag.  Graw has had a long career reporting in several conflict zones, including Iraq, Afghanistan, the Gaza strip, and the country of Georgia.  He is a U.S. resident and intends to continue to earn a living reporting on breaking news in the U.S., including protest activity and police action in Ferguson.

14. Plaintiff Frank Herrmann ("Herrmann") is the U.S. correspondent for a group of regional newspapers in Germany, led by *Rheinische Post*.   Herrmann has had a long career reporting in several conflict zones, including Iraq, the Gaza Strip, Lebanon and Afghanistan.  He is a U.S. resident and intends to continue to earn a living reporting on breaking news in the U.S., including protest activity and police action in Ferguson.

15. Defendants John Doe 1-10, whose names are not known to Plaintiffs, were police officers with the St. Louis County Police Department at all times relevant to this complaint. On or about August 18 and 19, 2014, Does 1-10 encountered Plaintiffs Devereaux and Hermsmeier and interacted with them as described in this complaint. Does 1-10 are sued in their individual capacity and official capacity.

16. Defendants John Doe 11-20, whose names are not known to Plaintiffs, were police officers with the St. Louis County Police Department at all times relevant to this complaint. On or about August 18, 2014, Does 11-20 encountered Plaintiffs Graw and Herrmann and interacted with them as described in this complaint.  Does 11-20 are sued in their individual capacity and official capacity.

17. Defendant St. Louis County (hereinafter the "County") is a municipal corporation duly organized under the laws of the State of Missouri.

18. Defendant St. Louis County Police Department (hereinafter "SLCPD") is an agency/entity of the County.

19. Defendants acted under color of state law at all times relevant to this complaint.

**Facts**

**a. The Arrest of Journalists Devereaux and Hermsmeier**

20. Plaintiffs Devereaux and Hermsmeier were in Ferguson, Missouri, on August 18-19, 2014.

21. At all times relevant to this complaint, Plaintiff Devereaux was employed as a journalist by the Intercept/First Look Media and traveled to Ferguson, Missouri, to report on the protests after the death of Michael Brown and document police action in response to those protests. During the course of his time in Ferguson, Devereaux was also reporting on the police response to the protests in Ferguson in real-time on social media, as events unfolded.

22. At all times relevant to this complaint, Plaintiff Hermsmeier was engaged as a journalist by *BILD* and traveled to Ferguson, Missouri, to report on the protests after the death of Michael Brown and document police action in response to those protests.

23. On the evening of August 18th, Devereaux and Hermsmeier were on West Florissant Avenue interviewing protesters, documenting and photographing protestor and police activity.

24. Protesters had gathered in the Canfield Drive area. In response to protestors' resistance to police orders requiring them to constantly be in motion – orders later found to be

constitutionally suspect[1] – the police tear-gassed the area near the West Florissant and Canfield Dr. intersection.

25. Police officers in armored vehicles and over loudspeakers then announced that they needed to clear the area due to a public safety threat.  In response to inquiries by journalists, police officers referred to "shots fired," but offered no further specifics.

26. The crowd dispersed.  Devereaux and Hermsmeier retreated to the West Florissant and Ferguson Avenue intersection and returned to their car, so they could head to the police-designated media center in a shopping center parking lot further south on West Florissant.

27. After first assisting a stranded journalist locate his car, Devereaux and Hermsmeier drove around the area in search of a route to the media center that did not require them to drive on West Florissant – the main artery for that area – as the police were denying access to that street.

28. As Devereaux and Hermsmeier were driving, they noticed that, approximately 35-40 minutes after the police announced that they needed to clear the Canfield Drive area, a small contingent of protesters had gathered on West Florissant, north of Canfield Drive - near the Lang Drive and Nesbit Drive intersections.

29. Devereaux and Hermsmeier heard a police officer over a loud-speaker announce to the protesters: "This is your final warning."  They parked their car in a residential area east of West Florissant Avenue and exited their car to investigate.  They began interviewing a

---

[1] *See Abdullah v. County of St. Louis*, 4:14 cv 1436, 2014 U.S. Dist. LEXIS 141744, *22-23, 25, 26 (E.D. Mo. Oct. 6, 2014) (granting Plaintiff's motion for preliminary injunction enjoining defendants from enforcing a police strategy of ordering citizens to keep moving who are peacefully assembled, finding that this police strategy burdened substantially more speech than necessary).

few of the protestors on the west side of West Florissant, but were interrupted when the police began firing tear gas in their direction.

30. Devereaux and Hermsmeier, along with the protestors they were interviewing, left West Florissant and entered Gage Drive, a quiet street parallel to West Florissant.  The protestors with them departed, but the police activity on West Florissant prevented Devereaux and Hermsmeier from returning to their car on the east side of West Florissant.

31. At that time, armored police vehicles were entering the streets surrounding West Florissant and indiscriminately shooting tear gas canisters and other projectiles into the residential area.  One of the projectiles started a small fire in the driveway of a home.

32. As one of the armored vehicles came in proximity to the street where Devereaux and Hermsmeier were located with lights scanning the area, the two journalists stepped forward with their hands in the air and holding their press identification, announcing that they were "Press" and "Journalists."

33. The armored vehicle stopped at the top of the Gage Drive, where Gage and Highmont Drive intersect.  Doe Officers 1-3 were in the vehicle.  Officers on top of the vehicle, turned the vehicle's lights on Devereaux and Hermsmeier and waved them forward.

34. Devereaux and Hermsmeier walked toward the vehicle, continuing to keep their hands in the air and continuing to identify themselves as journalists, including prominently displaying their press identification.

35. When they reached the Gage/Highmont intersection, officers on top of the vehicle motioned that they continue on Highmont Drive toward West Florissant where another

armored vehicle, and Doe Officers 4-10, were stationed with weapons trained on Devereaux and Hermsmeier.

36. Devereaux and Hermsmeier turned right onto Highmont Drive and began walking towards the second unit of officers.  They continued to have their hands in the air and continued to identify themselves as journalists.

37. As they walked toward the second unit of officers, Doe Officers 4-10, one or more Doe Officers in the first armored vehicle shot at Devereaux and Hermsmeier with, upon information and belief, rubber bullets.

38. Upon information and belief, one or more Doe officers in the second unit also shot at Devereaux and Hermsmeier.

39. Devereaux was hit once in the back and Hermsmeier was hit twice by the officers' shots.

40. Devereaux and Hermsmeier sought cover, continuing to identify themselves as journalists.

41. Doe officers 4 - 10 from the second unit surrounded Devereaux and Hermsmeier with guns drawn and led Devereaux and Hermsmeier to Highmont Drive and West Florissant.

42. Devereaux and Hermsmeier explained to Doe officers 4-10 that they were journalists attempting to return to their car.  After allowing Devereaux and Hermsmeier to begin to cross West Florissant towards their car, Doe officer 4 asked them to come back.  Then, Devereaux and Hermsmeier were handcuffed with plastic ties and driven by Doe officers 4-10 to a makeshift police command center located in a shopping center parking lot further south on West Florissant.

43. During that drive, after Devereaux again explained that he was a journalist and out there doing his job, Doe officer 5, complained that the police in Ferguson were getting a "bad rap" in the media.

44. During that drive, Hermsmeier informed officers that he was experiencing numbness in his hands and asked that the plastic ties be loosened.  Both Devereaux and Hermsmeier were left handcuffed in the plastic ties for several hours.

45. Devereaux and Hermsmeier were transported in another vehicle, from the command center to jail, where they were booked and processed.  Later, they learned that they had been charged with refusal to disperse.

46. Upon information and belief, the charges against both men remain open, though they have not been prosecuted.

47. They were detained for several hours before being released on August 19, 2014.

48. Hermsmeier's left hand was numb for several weeks following his arrest.  Devereaux has suffered from numbness in his right hand, which continues to date.

### b.  The Arrest of Ansgar Graw and Frank Hermann

49. Plaintiffs Graw and Herrmann were in Ferguson, Missouri, on August 18, 2014.

50. At all times relevant to this complaint, Plaintiff Graw was employed as a journalist by *Die Welt* and traveled to Ferguson, Missouri, to report on the protests following the death of Michael Brown and document police action in response to those protests.

51. At all times relevant to this complaint, Plaintiff Herrmann was employed as a journalist for a group of regional newspapers in Germany, led by *Rheinische Post,* and traveled to

Ferguson, Missouri, to report on the protests following the death of Michael Brown and document police action in response to those protests.

52. On the morning of August 18, 2014, Plaintiffs Herrmann and Graw were at the gas station on West Florissant – the unofficial gathering-point during the protests – where residents and visitors to the area had gathered and were engaging in peaceful demonstrations.

53. Plaintiffs Herrmann and Graw separately interviewed several residents and visitors at the gas station, before continuing to conduct interviews elsewhere. Some of the residents shared their stories of police violence.

54. That same day, around 1pm, Graw returned to the gas station, which was now cleared of people, except for police officers.

55. Graw approached a St. Louis County officer, Doe officer 11, at the gas station, to pose questions to him. Doe officer 11 told Graw that he should be ashamed of being a journalist and that journalists were "telling lies about Ferguson."

56.  Graw left the gas station and returned at around 2pm, with Herrmann, to attempt to conduct additional interviews and photograph the scene, including a building on the property that had been burned down. Doe officers 11-20 from St. Louis County were present.

57. Graw and Herrmann wore their press badges around their necks and carried still cameras.

58. Doe officer 12 informed them that they had to keep moving or be arrested.

59. Graw began walking in small circles to take photographs while complying with the officer's command to keep moving. Herrmann began to question an officer about the "keep moving" requirement.

10

60. Doe Officer 12 then said "That's it, I've warned you" and ordered the other officers present to "Go get them!"

61. Doe officers 11-20 surrounded Graw and Herrmann and one or more Doe officers placed their hands in plastic ties behind their backs.

62. When Graw asked for Doe officer 12's name, he replied "Donald Duck." Then, Doe officer 13 tightened the plastic ties on both Graw and Herrmann, in order to deliberately inflict pain on both journalists.

63. Graw and Herrmann were then transported by a different group of officers, first to the makeshift police command center, and then to the jail.

64. Graw and Herrmann were detained for several hours before being released. Their requests for water were denied at the jail.

65. Both journalists were on a deadline to report on the day's events in Ferguson.

66. Both journalists were charged with failure to disperse.

67. Upon information and belief, the charges against both Graw and Herrmann remain open, though they have not been prosecuted.

68. After their arrest, both of Herrmann's hands were swollen and he experienced numbness in his left hand for several weeks. Graw also experienced numbness in his hands that lasted several hours.

### c. **These Arrests and Detentions Were Without Probable Cause**

69. Plaintiffs were all arrested purportedly for an alleged "Refusal to Disperse" in violation of Missouri Revised Statute § 574.060.

70. Missouri Revised Statute § 574.060 provides that:

A person commits the crime of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot.

71. Defendants Doe Officers 1-10 lacked probable cause to arrest Plaintiffs Devereaux and Hermsmeier.

72. No reasonable officer would have believed that Doe Officers 1-10 had probable cause to arrest Devereaux and Hermsmeier.

73. Defendants Doe Officers 11-20 lacked probable cause to arrest Plaintiffs Graw and Herrmann.

74. No reasonable officer would have believed that Doe Officers 11-20 had probable cause to arrest Graw and Herrmann.

### d. The County and SLCPD Engaged in the Widespread Use of Arrests Without Probable Cause, Excessive Force, Intimidation, and Other Means to Unconstitutionally Censure Newsgathering and Recording of Police Activity

75. Doe Officers 1-20's actions in arresting Plaintiffs were part of a deliberate effort by the County and SLCPD, acting in concert with other local entities, to unconstitutional suppress the speech, newsgathering, and recording of police activity during the protests.

76. Upon information and belief, during the protests, both professional journalists and private citizen journalists were subject to arrest and detention without probable cause for exercising their right to record and document police activity.

77. Upon information and belief, both professional journalists and citizen journalists were subject to excessive use of force – including tear-gassing – during protests for exercising their right to record and document police activity.

78. News media and social media documented the attempts by police to unconstitutionally suppress the newsgathering and recording of police activity during the protests.  For example:

    a.  On August 11, 2014, journalist David Carson tweeted: "Being ordered to leave scene threatened with arrest #Ferguson"

    b.  On August 13, 2014, Fox2Now tweeted "News crews a[sic] been asked to leave the #Ferguson area."

    c.  On August 13, 2014, St. Louis station KDSK captured the tear-gassing of an Al-Jazeera news crew on video.  The video shows that the Al Jazeera journalists did not appear to be close to demonstrators — or anyone else — when they were tear-gassed.

    d.  Several local and national news outlets reported the arrest and assault of two journalists – Ryan Reilly and Wes Lowry – by St. Louis County police officers on August 13, 2014, for purportedly refusing to leave a McDonalds after being ordered to do so.

    e.  On August 14, 2014, TK Tech News (@TheRealTKTech) tweeted: "I just watched police physically assault a reporter and take them offline." #fergusonshooting

    f.  On August 18, 2014, a video was posted on Instagram of a Getty Images photographer, Scott Olson, being arrested because the media, he was told, was required to be in a certain area.

79. Police officers employed other less obvious tactics to suppress recording of police activity.

80. Devereaux observed a number of police officers pointing their guns at people so that the lights attached to the rifles would flash directly into their cameras, impairing journalists' ability to photograph the officers.  Devereaux himself was prevented from obtaining a clear image of a police officer stationed along West Florissant.  That officer raised his rifle at Devereaux, so that the light atop the rifle flashed directly into Devereaux's camera.

81. The aforementioned activities occurred and continue to occur in an open and notorious manner.

82. Senior officials of the SLCPD had notice of the aforementioned activities.

83. Upon information and belief, senior officials at the SLCPD were directing such action and/or tacitly accepting and encouraging such conduct by not preventing officers from engaging in such conduct and by not disciplining them when they did engage in such conduct.

84. As part of this concerted effort to suppress constitutionally protected newsgathering and recording of the protests and police response, senior officials at the SLCPD requested and received a ban by the Federal Aviation Administration of air traffic in more than 37 square miles of airspace surrounding Ferguson for 12 days, for the purpose of keeping away news helicopters.

**COUNT I**
*42 U.S.C. § 1983 - First Amendment*

85. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

86. Defendants violated Devereaux's and Hermsmeier's rights under the First Amendment to freedom of the press and freedom of speech by interfering with Plaintiffs' ability to gather information and cover a matter of public interest as members of the media.

87. Observing and recording public protests, and the police response to those protests, is a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

88. Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiffs' First Amendment rights.

89. As a direct and proximate result of Defendants unlawful actions, Plaintiffs were damaged.

**COUNT II**
*42 U.S.C. § 1983 - First Amendment*

90. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

91. Defendants violated Graw's and Herrmann's rights under the First Amendment to freedom of the press and freedom of speech by interfering with plaintiffs' ability to gather information and cover a matter of public interest as a member of the media.

92. Observing and recording public protests, and the police response to those protests, is a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

93. Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiffs' First Amendment rights.

94. As a direct and proximate result of Defendants unlawful actions, Plaintiffs were damaged.

**COUNT III**
*42 U.S.C. § 1983 First Amendment Retaliation*

95. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

96. Devereaux's and Hermsmeier's speech, newsgathering, and recording of protest activity in Ferguson is protected activity under the First Amendment.

97. Defendants' arrest and use of force against Devereaux and Hermsmeier was intended to deter and chill their exercise of their First Amendment rights.

98. Defendants' arrest and use of force against Devereaux and Hermsmeier was because they exercised their First Amendment rights.

99. As a direct and proximate result of Defendants' unlawful actions, Devereaux and Hermsmeier were damaged.

**COUNT IV**
*42 U.S.C. § 1983 First Amendment Retaliation*

100. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

101. Graw's and Herrmann's speech, newsgathering, and recording of protest activity in Ferguson is protected activity under the First Amendment.

102.  Defendants' arrest and use of force against Graw and Herrmann was intended to deter and chill their exercise of their First Amendment rights.

103.  Defendants' arrest and use of force against Graw and Herrmann was because they exercised their First Amendment rights.

104.  As a direct and proximate result of Defendants' unlawful actions, Graw and Herrmann were damaged.

**COUNT V**
*42 U.S.C. § 1983 - Fourth Amendment*
*Search and Seizure*

105.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

106.  Devereaux and Hermsmeier have a right under the Fourth Amendment to be free from unreasonable searches and seizures.

107.  Defendants violated Devereaux's and Hermsmeier's clearly established right to be free from unlawful searches and seizures when they arrested them, used excessive force, and detained them, all without probable cause to believe they had engaged in criminal activity.

108.  Defendants engaged in these actions willfully and knowingly, acting with deliberate indifference to Devereaux's and Hermsmeier's Fourth Amendment rights.

109.  As a direct and proximate cause of Defendants' unlawful actions, Devereaux and Hermsmeier were damaged.

## COUNT VI
*42 U.S.C. § 1983 - Fourth Amendment*
*Search and Seizure*

110.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

111. Graw and Herrmann have a right under the Fourth Amendment to be free from unreasonable searches and seizures.

112. Defendants violated Graw's and Herrmann's clearly established right to be free from unlawful searches and seizures when they arrested them, used excessive force, and detained them, all without probable cause to believe that they had engaged in criminal activity.

113. Defendants engaged in these actions willfully and knowingly, acting with deliberate indifference to Graw's and Herrmann's Fourth Amendment rights.

114.  As a direct and proximate cause of Defendants' unlawful actions, Graw and Herrmann were damaged.

## COUNT VII
*42 U.S.C. § 1983* and *Monell v. City of New York Dep't of Social Services*, 436 U.S. 658 (1978)
*Municipal and Supervisory Liability*
*(the County, SLCPD)*

115.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

116.  The County and SLCPD knew or should have known of their employees' propensity to engage in the illegal and wrongful acts that are the subject of this complaint.

117.  Prior to August 18, 2014, and since, the County and SLCPD developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of

persons in Ferguson and St. Louis County, which caused the violation of Plaintiffs' rights.

118. At the time of Plaintiffs' arrest, it was the County's and SLCPD's custom or policy to obstruct, prevent and retaliate against journalists and citizen journalists that were newsgathering, reporting, and recording police and protest activities in public locations, in violation of the First and Fourteenth Amendments.

119. Upon information and belief, one or more Doe Officers involved in the arrest and detention of Devereaux and Hermsmeier were supervisory officers of SLCPD and permitted or directed the unconstitutional conduct described herein.

120. Upon information and belief, one or more Doe Officers involved in Graw and Herrmann's arrest and detention were supervisory officers of SLCPD and permitted or directed the unconstitutional conduct described herein.

121. At all times relevant to this complaint, the County and SLCPD were aware that Defendant John Does were inadequately trained regarding the First Amendment and Fourth Amendment.  Nevertheless, the County and SLCPD maintained a custom or policy of failing to provide its police officers adequate training or supervision on the First Amendment and Fourth Amendment.

122. The County and SLCPD have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal, and unconstitutional conduct of the individual Defendants in this and in similar cases involving police misconduct.

123. The above-described customs and policies demonstrate deliberate indifference to the constitutional rights of persons within the County and Ferguson and caused the violation of Plaintiffs' rights alleged herein.

124.  Plaintiffs intend to continue their careers as professional journalists photographing and reporting on newsworthy protests from public locations, including activities in St. Louis County, but fear further obstruction, harassment, and detention by the County's police officers.  That fear makes it more difficult for them to gather news for dissemination to the public and interferes with them doing their job effectively.

125.  As a direct and proximate result of the County's and SLCPD's customs and policies, Plaintiffs sustained damages.

## COUNT VIII
### *State Law Claim - Declaratory Judgment*

126.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

127.  By reason of their conduct, Defendants deprived Plaintiffs of their rights to freedom of speech under Article I, Section 8, of the Missouri Constitution; as well as  freedom from arrest without probable cause and unreasonable search and seizure, under Article I, Section 15, of the Missouri Constitution.

128.  Defendant Doe officers 1-20 acted with reckless and callous indifference to Plaintiffs' rights under Article I, Sections 8 and 15, of the Missouri State Constitution. The unconstitutional policies and customs of St. Louis County and SLCPD were the moving force behind Defendant Doe officers' violation of Plaintiffs state constitutional rights.

129.  As a direct and proximate result of Defendants' actions, Plaintiffs sustained damages.

## COUNT IX
*State Law Claim - False Imprisonment*

130.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

131.  Defendants John Doe Officers 1-10 knowingly restrained Plaintiffs Devereaux and Hermsmeier against their will and without legal justification.

132.  Devereaux and Hermsmeier were confined for several hours, and their confinement was caused by Doe Officers 1-10.

133.  Doe Officers 1-10 intended to cause a confinement of Devereaux and Hermsmeier.

134.  Devereaux and Hermsmeier were aware of their confinement by Doe Officers 1-10.

135.  At all times relevant to this complaint, Doe Officers 1-10 were acting within the scope and course of their employment with the County and their actions were approved, consented to, and ratified by superior officers of the SLCPD acting within the scope of their employment.

136. Doe Officers 1-10's actions were a direct and proximate cause of the injury and harm suffered by Devereaux and Hermsmeier.

137. The County and SLCPD have waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.600.

## COUNT X
*State Law Claim - False Imprisonment*

138.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

139. Defendants John Doe Officers 11-20 knowingly restrained Plaintiffs Graw and Herrmann against their will and without legal justification.

140. Graw and Herrmann were confined for several hours, and their confinement was caused by Doe Officers 11-20.

141. Doe Officers 11-20 intended to cause a confinement of Graw and Herrmann.

142. Graw and Herrmann were aware of their confinement by Doe Officers 11-20.

143. At all times relevant to this complaint, Doe Officers 11-20 were acting within the scope and course of their employment with the County and SLCPD, and their actions were approved, consented to, and ratified by superior officers of the SLCPD acting within the scope of their employment.

144. Doe Officers 11-20's actions were a direct and proximate cause of the injury and harm suffered by Graw and Herrmann.

145. The County and SLCPD have waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.600.

### COUNT XII
*State Law Claim - Battery*
*(Against Defendants John Doe Officers 1-10, the County, SLCPD)*

146. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

147. In the course of Doe Officers 1-10's unlawful arrest of Devereaux and Hermsmeier, one or more Doe Officers 1-10 intentionally shot at and hit Devereaux and Hermsmeier with rubber bullets.

148. Devereaux and Hermsmeier did not consent to the unlawful offensive contact by Doe Officers 1-10.

149. Devereaux and Hermsmeier sustained damages as a result of Doe Officers 1-10 intentional offensive contact.

150. Doe Officers 1-10's actions were willful and wanton and showed a reckless indifference to the rights of others, including the rights of Devereaux and Hermsmeier.

151. Doe Officers 1-10 used more force than was reasonably necessary to arrest Devereaux and Hermsmeier.

152. Doe Officers 1-10 caused Devereaux and Hermsmeier bodily harm.

153. Devereaux and Hermsmeier found the physical contact offensive.

154. A reasonable person would find the physical contact offensive.

155. At all times relevant to this complaint, Doe Officers 1-10 were acting within the scope and course of their employment with SLCPD and their actions were approved, consented to, and ratified by superior officers of the SLCPD acting within the scope of their employment.

156. Defendant Doe Officer 1-10's actions were a direct and proximate cause of the physical harm suffered by Devereaux and Hermsmeier.

157. The County and SLCPD have waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.600.

**COUNT XIII**
*State Law Claim - Battery*
*(Against Defendants John Doe Officers 11-20, the County, SLCPD)*

158. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

159. In the course of Doe Officers 11-20's unlawful arrest of Graw and Herrmann, Doe Officer 13, with the knowledge and approval of other officers present, intentionally tightened the plastic restraints on Graw's and Herrmann's hands to restrict and impair circulation and blood flow to their hands.

160. Graw and Herrmann did not consent to this unlawful offensive contact by Doe Officers 11-20.

161. Graw and Herrmann sustained damages as a result of Doe Officers 11-20's intentional offensive contact.

162. Doe Officer 11-20's actions were willful and wanton and showed a reckless indifference to the rights of others, including the rights of Graw and Herrmann.

163. Doe Officers 11-20 used more force than was reasonably necessary to arrest Graw and Herrmann.

164. Doe Officers 11-20 caused Graw and Herrmann bodily harm.

165. Graw and Herrmann found the physical contact offensive.

166. A reasonable person would find the physical contact offensive.

167. At all times relevant to this complaint, Doe Officers 11-20 were acting within the scope and course of his employment with SLCPD, and their actions were approved, consented to, and ratified by superior officers of the SLCPD acting within the scope of their employment.

168. Defendant Doe Officers 11-20's actions were a direct and proximate cause of the physical harm suffered by Graw and Herrmann.

169. The County and SLCPD have waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.600.

<u>Prayer for Relief</u>

WHEREFORE, Plaintiffs pray this Court:

A. Enter judgment in favor of Plaintiffs and against Defendants;

B. Issue injunctive relief enjoining Defendants from using illegal and unconstitutional means to prevent Plaintiffs and other members of the press access to policing activities in connection with public speech and assembly and to order such other injunctive relief as may be appropriate to prevent any future violations of federal and state law;

C. Issue a Declaratory Judgment that the Defendants willfully violated Plaintiffs' rights secured by federal and state law as alleged herein;

D. Award compensatory damages to Plaintiffs who have been damaged by the unlawful and/or unconstitutional actions of Defendants;

E. Award Plaintiffs punitive damages against Defendants;

F. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and

G. Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,


By: _/s/ Corrine A. Irish_____

Corrine A. Irish
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, New York 10112
Tel:     (212) 872-9800
Fax:     (212) 872-9815
corrine.irish@squirepb.com
E.D. Mo. Bar No. 4289716NY

Steven Friedman (Ohio Bar #0060001)
(admission pro hac pending)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Tel;     216-479-8500
Fax:     216-479-8780
Steven.friedman@squirepb.com
Attorneys for Plaintiffs