**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| _____ ) | |
| RYAN DEVEREAUX, LUKAS ) | |
| HERMSMEIER, ANSGAR GRAW, ) | |
| FRANK HERRMANN, ) | |
| Plaintiffs, ) | |
| vs. ) | **Civil Action No.  4:15-cv-00553-RWS** |
| ) | |
| COUNTY OF ST. LOUIS, MISSOURI, ) | |
| JOHN BELMAR, CITY OF ST LOUIS, ) | **JURY TRIAL DEMANDED** |
| SAM DOTSON, JOHN PFANSTIEL, ) | |
| ROBERT FUMAGALLI, COREY ) | |
| ZAVORKA, JUSTIN SPARKS, ) | |
| MATTHEW HAUCK, JASON DITE, ) | |
| JASON NEUMAN, MATTHEW TAYLOR, ) | |
| SCOTT MICELI, BRIAN LUDWIG, ) | |
| JEFFREY FUESTING, WALTER DAVIS, ) | |
| NICHOLAS REBHOLZ, MATTHEW ) | |
| ZUFALL, BRIAN MCCAULEY, ) | |
| AMY DLUGOS, MARCIAL AMARO, ) | |
| JOSH BECHERER, JAMES JOYNER, ) | |
| BRIAN ROSSOMANNO, ) | |
| Defendants. ) | |
| _____ ) | |

## SECOND AMENDED COMPLAINT

### Introduction

1. This is a civil rights action under 42 U.S.C. § 1983.  Plaintiffs Ryan Devereaux, Lukas

    Hermsmeier, Ansgar Graw, and Frank Herrmann ("Plaintiffs") – all professional

    journalists – seek judgment against St. Louis County, and Jon Belmar, St. Louis County

    Chief of Police, St. Louis County Police Officers John Pfanstiel, Robert Fumagalli, Corey

    Zavorka, Justin Sparks, Matthew Hauck, Jason Dite, Jason Neuman, Matthew Taylor,

Scott Miceli, Brian Ludwig, Marcial Amaro, Jeffrey Fuesting, Walter Davis, Nicholas Rebholtz, Matthew Zufall, Brian McCauley, Amy Dlugos, the City of St. Louis, St. Louis Metropolitan Police Commissioner Sam Dotson, and St. Louis Metropolitan Police Officers Josh Becherer, Brian Rossomanno and James Joyner (collectively "Defendants").  Plaintiffs allege that these Defendants committed acts, under color of law, which deprived Plaintiffs of rights secured under the First, Fourth, and Fourteenth Amendments to the Constitution of the United States, the Missouri Constitution, and related state laws, as set forth below.

2. This claim arises from Plaintiffs' efforts, as journalists, to document, report on, and record the protests in Ferguson, Missouri that followed the shooting-death of Michael Brown on August 9, 2014, and the police action taken during those protests.  Officers from the St. Louis County and City Police Departments intentionally and willfully subjected Plaintiffs to violations of freedom of the press and free speech, by purposefully obstructing Plaintiffs from carrying out their assignments as members of the press – assignments which include oversight of police action against citizens engaged in protest activity.   In the course of their undertakings intended to suppress Plaintiffs' First Amendment rights, these officers employed means that violated Plaintiffs' right to be free from unreasonable searches and seizures, and constituted battery and/or false imprisonment under state law.

3. This unlawful conduct was undertaken with the intention of obstructing, chilling, deterring, and retaliating against Plaintiffs for engaging in constitutionally-protected speech, newsgathering, and recording of police activities.

4. Defendants County Police Chief John Belmar and St. Louis County are liable for the violations of Plaintiffs' rights secured under the Constitution and laws of the United States and the State of Missouri.  Police Chief John Belmar and St. Louis County have ignored, condoned and/or permitted a pattern of excessive force, false arrest, suppression of constitutionally-protected speech, newsgathering, and recording of police activities and failed to train, investigate, and supervise St. Louis County officers, thus leading to the violations described herein.  St. Louis County is also liable for false imprisonment and battery.

5. Defendants St. Louis Metropolitan Police Department Commissioner Sam Dotson and the City of St. Louis are liable for the violations of Plaintiffs' rights secured under the Constitution and laws of the United States and the State of Missouri.  Commissioner Dotson and the City have ignored, condoned and/or permitted a pattern of excessive force, suppression of constitutionally-protected speech, newsgathering, and recording of police activities and failed to train, investigate, and supervise City officers, thus leading to the violations described herein.  The City is also liable for battery.

6. Plaintiffs now bring this action to assure that present and future First Amendment protected activities of Plaintiffs and others will not be suppressed by Defendants, in violation of both Missouri and U.S. Constitutional guarantees.  "[An] untrammeled press [is] a vital source of public information and an informed public is the essence of working democracy."  *Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 585 (1983) (internal citation omitted) (alterations in original).

**Jurisdiction and Venue**

7.  This action arises under the Constitution of the United States, the provisions of 42 U.S.C. § 1983, and Missouri law.

8.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a).

9.  This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to the claims occurred in St. Louis County, Missouri.

11. Venue is proper in the Eastern Division pursuant to E.D. Mo. L.R. 2.07(A)(1).

**Parties**

12. Plaintiff Ryan Devereaux ("Devereaux") is a journalist with the Intercept/First Look Media, covering national security and criminal justice.   His work has appeared in the Guardian, RollingStone.com, the Nation, Democracy Now!, and the Village Voice, among other media outlets.  He has published several articles on the events in Ferguson, including protest activity and police action in Ferguson.  He is a U.S. citizen and intends to continue to earn a living reporting on criminal justice issues and covering the protest activity and police action in Ferguson.

13. Plaintiff Lukas Hermsmeier ("Hermsmeier") is a freelance journalist. His work has appeared in several German newspapers and magazines, including Tagesspiegel, Welt, Musikexpress, and BILD, Germany's biggest newspaper.  He is a U.S. resident and intends to continue to earn a living reporting on breaking news in the U.S., including protest activity and police action in Ferguson.

14. Plaintiff Ansgar Graw ("Graw") is the Senior Political U.S. Correspondent for Die Welt and Welt am Sonntag.  Graw has had a long career reporting in several conflict zones, including Iraq, Afghanistan, the Gaza strip, and the country of Georgia.  He is a U.S. resident and intends to continue to earn a living reporting on breaking news in the U.S., including protest activity and police action in Ferguson.

15. Plaintiff Frank Herrmann ("Herrmann") is the U.S. correspondent for a group of regional newspapers in Germany, led by *Rheinische Post*.   Herrmann has had a long career reporting in several conflict zones, including Iraq, the Gaza Strip, Lebanon and Afghanistan.  He is a U.S. resident and intends to continue to earn a living reporting on breaking news in the U.S., including protest activity and police action in Ferguson.

16. Defendant Police Officers Robert Fumagalli, Corey Zavorka, Justin Sparks, Matthew Hauck, Jason Dite, Jason Neuman, Matthew Taylor, Scott Miceli, Sergeant John Pfanstiel, and Captain Brian Ludwig (collectively "County SWAT Defendants") were St. Louis County police officers at all times relevant to this complaint, acting under color of state law, and were employed by the County acting under the direction of the County and the County's Police Department ("SLCPD"). On or about August 19, 2014, these officers encountered Plaintiffs Devereaux and Hermsmeier and interacted with them as described in this complaint. These officers are sued in their individual capacity.

17. Defendant Police Officers Josh Becherer, Sergeant Brian Rossomanno and Lieutenant James Joyner (collectively "City SWAT Defendants") were St. Louis City police officers at all times relevant to this complaint, acting under color of state law, and were employed by the City acting under the direction of the City and the City's Metropolitan Police Department ("SLMPD"). On or about August 19, 2014, these officers encountered

Plaintiffs Devereaux and Hermsmeier and interacted with them as described in this complaint. These officers are sued in their individual capacity.

18. Defendant Police Officers Marcial Amaro, Nicholas Rebholz, Matthew Zufall, Brian McCauley, Amy Dlugos, Sergeant Walter Davis and Captain Jeffrey Feusting were St. Louis County police officers at all times relevant to this complaint, acting under color of state law, and were employed by the County acting under the direction of the County and SLCPD.  On or about August 18, 2014, these officers encountered Plaintiffs Graw and Herrmann and interacted with them as described in this complaint.  These officers are sued in their individual capacity.

19. At all times relevant to this complaint, Defendant John Belmar ("Belmar") was/is the Chief of Police for St. Louis County and, at all times, was a state actor, acting pursuant to his authority as Chief of Police and was employed by the County.  Belmar is sued in his individual and official capacity.

20. At all relevant times to this complaint, Defendant St. Louis County (the "County") was a municipal corporation duly organized under the laws of the State of Missouri. The County maintained a police department that operates under, and administers, a set of law enforcement policies, practices and customs involving the hiring, training, and supervision of its officers.

21. At all times relevant to this complaint, Defendant Sam Dotson ("Dotson") was/is the Police Commissioner for the City of St. Louis and, at all times, was a state actor, acting pursuant to his authority as Police Commissioner and was employed by the City.  Dotson is sued in his individual and official capacity.

22. At all relevant times to this complaint, Defendant St. Louis City (the "City") was a municipal corporation duly organized under the laws of the State of Missouri. The City maintained a police department that operates under, and administers, a set of law enforcement policies, practices and customs involving the hiring, training, and supervision of its officers.

23. Defendants acted under color of state law, to wit, under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the City and/or County, at all times relevant to this complaint.

**Facts**

**a.  The Arrest of Journalists Devereaux and Hermsmeier**

24. Plaintiffs Devereaux and Hermsmeier were in Ferguson, Missouri, on August 18-19, 2014.

25. At all times relevant to this complaint, Plaintiff Devereaux was employed as a journalist by the Intercept/First Look Media and traveled to Ferguson, Missouri, to report on the protests after the death of Michael Brown and document police action in response to those protests.  During the course of his time in Ferguson, Devereaux was also reporting on the police response to the protests in Ferguson in real-time on social media, as events unfolded.

26. At all times relevant to this complaint, Plaintiff Hermsmeier was engaged as a journalist by *BILD* and traveled to Ferguson, Missouri, to report on the protests after the death of Michael Brown and document police action in response to those protests.

27. In the late evening of August 18th, Devereaux and Hermsmeier were on West Florissant Avenue interviewing protesters, documenting and photographing protestor and police activity.

28. Protesters had gathered in the Canfield Drive area. In response to protestors' resistance to police orders requiring them to constantly be in motion – orders later found to be constitutionally suspect[1] – the police tear-gassed the area near the West Florissant and Canfield Dr. intersection.

29. Police officers in armored vehicles and over loudspeakers then announced that they needed to clear the area due to a public safety threat. In response to inquiries by journalists, police officers referred to "shots fired," but offered no further specifics.

30. The crowd dispersed. Devereaux and Hermsmeier retreated to the West Florissant and Ferguson Avenue intersection and returned to their car, so they could head to the police-designated media center in a shopping center parking lot further south on West Florissant.

31. After first assisting a stranded journalist locate his car, Devereaux and Hermsmeier drove around the area in search of a route to the media center that did not require them to drive on West Florissant – the main artery for that area – as police were denying access to that street.

32. As Devereaux and Hermsmeier were driving, they noticed that, approximately 35-40 minutes after the police announced that they needed to clear the Canfield Drive area, a

---

[1] *See Abdullah v. County of St. Louis*, 4:14 cv 1436, 2014 U.S. Dist. LEXIS 141744, *22-23, 25, 26 (E.D. Mo. Oct. 6, 2014) (granting Plaintiff's motion for preliminary injunction enjoining defendants from enforcing a police strategy of ordering citizens to keep moving who are peacefully assembled, finding that this police strategy burdened substantially more speech than necessary).

small contingent of protesters had gathered on West Florissant, north of Canfield Drive - near the Lang Drive and Nesbit Drive intersections.

33. Devereaux and Hermsmeier heard a police officer over a loud-speaker announce to the protesters: "This is your final warning."  They parked their car in a residential area east of West Florissant Avenue and exited their car to investigate.  They began interviewing a few of the protestors on the west side of West Florissant, but were interrupted when the police began firing tear gas in their direction.

34. Devereaux and Hermsmeier, along with the protestors they were interviewing, left West Florissant and entered Gage Drive, a quiet street parallel to West Florissant.  The protestors with them departed, but the police activity on West Florissant prevented Devereaux and Hermsmeier from returning to their car on the east side of West Florissant.

35. At that time, armored police vehicles were entering the streets surrounding West Florissant and indiscriminately shooting tear gas canisters and other projectiles into the residential area.  One of the projectiles started a small fire in the driveway of a home.

36. As one of the armored vehicles came in proximity to the street where Devereaux and Hermsmeier were located with lights scanning the area, the two journalists stepped forward with their hands in the air and holding their press identification, announcing that they were "Press" and "Journalists."

37. The armored vehicle stopped at the top of the Gage Drive, where Gage and Highmont Drive intersect.  SLMPD SWAT officers, including the City SWAT Defendants, were in the vehicle operating under the supervision and direction of Defendants Rossomanno and

Joyner.  The officers turned the vehicle's lights on Devereaux and Hermsmeier and waved them forward.

38. Devereaux and Hermsmeier walked toward the vehicle, continuing to keep their hands in the air and continuing to identify themselves as journalists, including prominently displaying their press identification.

39. When they reached the Gage/Highmont intersection, SLMPD officers, including Defendant Becherer, signaled for Devereaux and Hermsmeier to continue on Highmont Drive toward West Florissant where a County armored vehicle, and County SWAT Defendants, were stationed with weapons trained on Devereaux and Hermsmeier.

40. Devereaux and Hermsmeier turned right onto Highmont Drive and began walking towards the County SWAT unit.  They continued to have their hands in the air and continued to identify themselves as journalists.

41. As they walked toward the County SWAT unit, Defendant Officer Becherer, in the SLMPD armored vehicle shot at Devereaux and Hermsmeier with less-than-lethal projectiles.

42. Defendants Joyner and Rossomano, despite having the opportunity, authority, and means, failed to intervene in Defendant Becherer's unnecessary and unjustified use of less-than-lethal force.

43. Defendants Lieutenant Joyner and Sergeant Rossomano failed to properly supervise or investigate Defendant Becherer's less-than-lethal shooting and authorized, endorsed and/or condoned Becherer less-than-lethal shooting against Devereaux and Hermsmeier with reckless disregard for whether the level of force used by Becherer was excessive and unnecessary.  Defendant Joyner and Rossomano also acted with reckless disregard for

whether Devereaux and Hermsmeier were shot at in retaliation for and/or in order to suppress their constitutionally protected right to record and newsgather as to the activities of law enforcement during the protests.

44.  Defendant County Officer Sparks also shot at Devereaux and Hermsmeier.

45. Defendant County Officers Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, and Sergeant Pfanstiel, despite having the opportunity and means, failed to intervene in Defendant Sparks' unnecessary and unjustified use of less-than-lethal force.

46. Devereaux was hit once in the back and Hermsmeier was hit twice by the officers' shots.

47. Devereaux and Hermsmeier sought cover, continuing to identify themselves as journalists.

48. Defendant County Officers Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks and Sergeant Pfanstiel surrounded Devereaux and Hermsmeier with guns drawn and detained Devereaux and Hermsmeier at the intersection of Highmont Drive and West Florissant.

49. Despite Devereaux and Hermsmeier explaining that they were journalists engaged in recording and newsgathering activity and attempting to return to their car, the County SWAT Defendants detained and handcuffed Devereaux and Hermsmeier with plastic restraints, secured them in the armored vehicle, and transported them to a makeshift police command center located in a shopping center parking lot further south on West Florissant.

50. Upon information and belief, Defendant Sparks, Hauck and/or another County SWAT Defendant placed and tightened the plastic restraints on Devereaux and Hermsmeier in a manner intended to inflict pain on both journalists.

51. During transport in the armored vehicle, Devereaux again explained that he was a journalist and out there doing his job.  One of the County SWAT Defendants then complained that the police in Ferguson were getting a "bad rap" in the media.

52. During that drive, Devereaux and Hermsmeier informed County Officers Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck and Sparks that they were experiencing numbness in their hands and asked that the plastic restraints be loosened.  Their requests were denied.  Both Devereaux and Hermsmeier were left handcuffed in the plastic restraints for several hours.

53. Defendant County Officers Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck and Sparks executed the less-than-lethal shooting, detention, and arrest of Devereaux and Hermsmeier under the supervision, direction, authorization and approval of Defendant County Officers Sergeant Pfanstiel and Captain Ludwig.  Defendants Pfanstiel and Ludwig failed to properly supervise or investigate the actions of the Defendant County Officers in there command, with reckless disregard for whether probable cause existed for Devereaux and Hermsmeier's arrest or whether the use of force by those under their command was excessive.  Defendants Pfanstiel and Ludwig also acted with reckless disregard for whether Devereaux and Hermsmeier were arrested in retaliation for and/or in order to suppress their constitutionally-protected right to record and newsgather as to the activities of law enforcement during the protests.

54. Devereaux and Hermsmeier were transported in another vehicle, from the command center to jail, where they were booked and processed.  Later, they learned that they had been charged with refusal to disperse.

55. The charges against both men have since been refused for prosecution by the County Counselor.

56. Hermsmeier and Devereaux were detained for several hours before being released on August 19, 2014.

57. Hermsmeier's left hand was numb for several weeks following his arrest.  Devereaux has suffered from ongoing numbness in his right hand.

58. No reasonable officer would have believed that the force used in detaining and arresting Devereaux and Hermsmeier was necessary and/or justified.

### b.  The Arrest of Ansgar Graw and Frank Hermann

59. Plaintiffs Graw and Herrmann were in Ferguson, Missouri, on August 18, 2014.

60. At all times relevant to this complaint, Plaintiff Graw was employed as a journalist by *Die Welt* and traveled to Ferguson, Missouri, to report on the protests following the death of Michael Brown and document police action in response to those protests.

61. At all times relevant to this complaint, Plaintiff Herrmann was employed as a journalist for a group of regional newspapers in Germany, led by *Rheinische Post,* and traveled to Ferguson, Missouri, to report on the protests following the death of Michael Brown and document police action in response to those protests.

62. On the morning of August 18, 2014, Plaintiffs Herrmann and Graw were at the gas station on West Florissant – the unofficial gathering-point during the protests – where residents and visitors to the area had gathered and were engaging in peaceful demonstrations.

13

63. Plaintiffs Herrmann and Graw separately interviewed several residents and visitors at the gas station, before continuing to conduct interviews elsewhere. Some of the residents shared their stories of police violence.

64. That same day, around 1pm, Graw returned to the gas station, which was now cleared of people, except for police officers.

65. Graw approached a St. Louis County officer at the gas station, to pose questions.  This officer told Graw that he should be ashamed of being a journalist and that journalists were "telling lies about Ferguson."

66.  Graw left the gas station and returned at around 2pm, with Herrmann, to attempt to conduct additional interviews and photograph the scene, including a building on the property that had been burned down.  Defendants County Officers Amaro, Rebholz, Zufall, McCauley, Dlugos, Sergeant Davis and Captain - then Lieutenant - Fuesting were present.

67. Graw and Herrmann wore their press badges around their necks and carried still cameras.

68. Defendant County Officer Amaro informed them that they had to keep moving or be arrested.

69. Graw began walking in small circles to take photographs while complying with the officer's command to keep moving.  Herrmann began to question an officer about the "keep moving" requirement.

70.  Defendant Amaro then said "That's it, I've warned you" and ordered the other officers present to "Go get them!"

71. Defendant County Officers Amaro, Rebholz, Zufall, McCauley, Dlugos, Sergeant Davis, and Captain Fuesting surrounded Graw and Herrmann and one or more of these officers placed their hands in plastic restraints behind their backs.

72. When Graw asked for Defendant Officer Amaro's name, he replied "Donald Duck." Then, Defendant Amaro, Rebholz, Zufall, McCauley, Dlugos, Davis, and/or Fuesting, either tightened the plastic restraints on both Graw and Herrmann, in order to deliberately inflict pain on both journalists, or were aware that the restraints were being tightened deliberately and excessively, and failed to intervene to prevent harm to Graw and Herrmann.

73. Sergeant Davis and Captain Fuesting supervised, approved, and directed the detention and arrests of Graw and Herrmann with knowledge or reckless disregard of the absence of probable cause to arrest Graw and Herrmann; whether the use of force by those under their supervision was excessive; or whether Graw and Herrmann were arrested in retaliation for or in order to suppress their constitutionally-protected right to record and newsgather as to the activities of law enforcement during the protests.

74. Graw and Herrmann were then transported by a different group of officers, first to the makeshift police command center, and then to the jail.

75. Graw and Herrmann were detained for several hours before being released.  Their requests for water were denied at the jail.

76. Both journalists were on a deadline to report on the day's events in Ferguson.

77. Both journalists were charged with failure to disperse.

78. The charges against both Graw and Herrmann were refused for prosecution by the County Counselor's office.

79. After their arrest, both of Herrmann's hands were swollen and he experienced numbness in his left hand for several weeks.  Graw also experienced numbness in his hands that lasted several hours.

80. No reasonable officer would have believed that the force used in detaining and arresting Graw and Herrmann was necessary and/or justified.

### c. **These Arrests and Detentions Were Without Probable Cause**

81. Plaintiffs were all arrested purportedly for an alleged "Refusal to Disperse" in violation of Missouri Revised Statute § 574.060.

82. Missouri Revised Statute § 574.060 provides that:

> A person commits the crime of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot.

83. Defendants Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks and Ludwig lacked probable cause to arrest and detain Plaintiffs Devereaux and Hermsmeier.

84. No reasonable officer would have believed that Defendants Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks and Ludwig had probable cause to arrest and detain Devereaux and Hermsmeier.

85. Defendants Fuesting, Amaro, Davis, Rebholz, Zufall, McCauley, and Dlugos lacked probable cause to arrest and detain Plaintiffs Graw and Herrmann.

86. No reasonable officer would have believed that Defendants Fuesting, Amaro, Davis, Rebholz, Zufall, McCauley, and Dlugos had probable cause to arrest and detain Graw and Herrmann.

**d. Law Enforcement Engaged in the Widespread Use of Arrests Without Probable Cause, Excessive Force, Intimidation, and Other Means to Unconstitutionally Censure Newsgathering and Recording of Police Activity**

87. Defendant County Officers Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, Ludwig, Fuesting, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos, SLMPD Officers Becherer, Rossomanno, and Joyner's actions in arresting Plaintiffs were part of a deliberate effort by the County, acting in concert with the City and other state and local entities, to unconstitutionally suppress the speech, newsgathering, and recording of police activity during the protests.

88. During the period of August 18-19, 2014, Defendants County Officers Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, Ludwig, Fuesting, Amaro, Davis, Rebholz, Zufall, McCauley, and Dlugos were acting under the direction and control, and pursuant to the practices and customs of the County, as implemented by Defendant Chief Belmar.

89. During the period of August 18-19, 2014, Defendants SLMPD Officers Becherer, Busso, Coats, Rassomanno, and Joyner were acting under the joint direction and control of the County and the City, and pursuant to the practices and customs of the County and City, as implemented by Defendants Chief Belmar and Commissioner ("Comm.") Dotson.

90. Upon information and belief, during the protests, both professional journalists and private citizen journalists were subject to arrest and detention without probable cause for exercising their right to record and document police activity.

91. Upon information and belief, both professional journalists and citizen journalists were subject to excessive use of force – including tear-gassing – during protests for exercising their right to record and document police activity.

92. News media and social media documented the attempts by police to unconstitutionally suppress the newsgathering and recording of police activity during the protests.  For example:

   a.  On August 11, 2014, journalist David Carson tweeted: "Being ordered to leave scene threatened with arrest #Ferguson"

   b.  On August 13, 2014, Fox2Now tweeted "News crews a[sic] been asked to leave the #Ferguson area."

   c.  On August 13, 2014, St. Louis station KDSK captured the tear-gassing of an Al-Jazeera news crew on video.  The video shows that the Al Jazeera journalists did not appear to be close to demonstrators – or anyone else – when they were tear-gassed.

   d.  Several local and national news outlets reported the arrest and assault of two journalists – Ryan Reilly and Wes Lowry – by St. Louis County police officers on August 13, 2014, for purportedly refusing to leave a McDonalds after being ordered to do so.

   e.  On August 14, 2014, TK Tech News (@TheRealTKTech) tweeted: "I just watched police physically assault a reporter and take them offline." #fergusonshooting

   f.  On August 18, 2014, a video was posted on Instagram of a Getty Images photographer, Scott Olson, being arrested because the media, he was told, was required to be in a certain area.

93. Police officers employed other obvious tactics to suppress recording of police activity.

94. For example, Devereaux observed a number of police officers pointing their guns at people so that the lights attached to the rifles would flash directly into their cameras, impairing journalists' ability to photograph the officers.  Devereaux himself was prevented from obtaining a clear image of a police officer stationed along West Florissant.  That officer raised his rifle at Devereaux, so that the light atop the rifle flashed directly into Devereaux's camera.

95. The aforementioned activities occurred and continue to occur in an open and notorious manner.

96. Chief Belmar and the County had notice of the aforementioned activities.

97. Comm. Dotson and the City had notice of the aforementioned activities.

98. Upon information and belief, Chief Belmar, Comm. Dotson, the City and the County were directing such action and/or tacitly accepting and encouraging such conduct by not preventing officers from engaging in such conduct and by not disciplining them when they did engage in such conduct.

99. As part of this concerted effort to suppress constitutionally protected newsgathering and recording of the protests and police response, senior County police officials requested and received a ban by the Federal Aviation Administration of air traffic in more than 37 square miles of airspace surrounding Ferguson for 12 days, for the purpose of keeping away news helicopters.

### e. The County and Chief Belmar Failed to Supervise, Train, Investigate, and Discipline First and Fourth Amendment Violations

100.   At all times relevant to this complaint, the County and Chief Belmar were aware that its officers were inadequately trained regarding the First Amendment and Fourth Amendment.  Nevertheless, the County and Chief Belmar maintained a custom or policy

of failing to provide County police officers adequate training or supervision on the First

Amendment and Fourth Amendment.

101.  Upon information and belief, prior to August 18, 2014, the County and Chief Belmar

had implemented no policy or directive protecting the right to record and/or newsgather

and had offered no meaningful training on these subjects.

102.   Upon information and belief, prior to August 18, 2014, the County and Chief Belmar

condoned, allowed, or endorsed SLCPD officers excessive use of force or arrests without

probable cause in retaliation for or to suppress First Amendment protected activity.

103. Prior to August 18, 2014, the County and Chief Belmar failed to maintain an

appropriate system to document and investigate less-than-lethal use-of-force incidents by

its officers.

104. Upon information and belief, prior to August 18, 2014, the County's customs and

policies did not require that less-than-lethal use-of-force incidents be documented or

investigated within a reasonable time after the incident took place.

105. Upon information and belief, the County's customs and polices allow SLCPD officers

involved in less-than-lethal use-of-force incidents to decide whether and when to report

and document their involvement.

106. Upon information and belief, the County and Chief Belmar's investigation and

documentation of the use-of-force allegations described in this complaint did not begin

until after this complaint was filed.

107. The County and Chief Belmar's condoning, authorizing or allowing this delay in

documenting and investigating less-than-lethal use-of-force incidents involving SLCPD

officers during the August, 2014 Ferguson protests undermines the ability to effectively

supervise and investigate less-than-lethal force incidents like the incidents involving the Plaintiffs.

108.  Prior to August 18, 2014, the County and Chief Belmar failed to adequately train and supervise County officers in the use of less-than-lethal force or the appropriate use of force in responding to civil disturbances.

109.     At all times relevant to this complaint, the County and Chief Belmar were aware that their customs and policies were inadequate to properly supervise, investigate, train and discipline its officers regarding the use of excessive force.  Nevertheless, the County and Chief Belmar maintained these inadequate customs and policies.

### f. The City and Comm. Dotson Failed to Supervise, Train, Investigate, and Discipline First and Fourth Amendment Violations

110.  At all times relevant to this complaint, the City and Comm. Dotson were aware that its officers were inadequately trained regarding the First Amendment and Fourth Amendment.  Nevertheless, the City and Comm. Dotson maintained a custom or policy of failing to provide SLMPD police officers adequate training or supervision on the First Amendment and Fourth Amendment.

111.  Upon information and belief, prior to August 18, 2014, the City and Comm. Dotson had implemented no policy or directive protecting the right to record and/or newsgather and had offered no meaningful training on these subjects.

112.  Upon information and belief, prior to August 18, 2014, the City and Comm. Dotson condoned, allowed, or endorsed SLMPD officers excessive use of force or arrests without probable cause in retaliation for or to suppress First-Amendment protected activity.

113.  Prior to August 18, 2014, the City and Dotson failed to maintain an appropriate system to document and investigate less-than-lethal use-of force incidents by its officers.

114.  Upon information and belief, prior to August 18, 2014, the City's customs and policies do not require that less-than-lethal use-of-force incidents be documented or investigated within a reasonable time after the incident took place.

115.  For example, the only report documenting the less-than-lethal use-of-force activities of the County SWAT Officers during the August, 2014 Ferguson protests has still not been completed, over a year later, and is still in draft form.

116.  Upon information and belief, the City's customs and polices allow SLMPD officers involved in use of force incidents to decide whether and when to report and document their involvement.

117.  The City and Comm. Dotson's condoning, authorizing or allowing this delay in documenting less-than-lethal use-of-force incidents involving SLMPD officers during the August, 2014 Ferguson protests undermines the ability to effectively supervise and investigate less-than-lethal force incidents like the incident involving Devereaux and Hermsmeier.

118.  Prior to August 18, 2014, the City and Comm. Dotson failed to adequately train and supervise SLMPD officers in the use of less-than-lethal force or the appropriate use of force in responding to civil disturbances.

119.  At all times relevant to this complaint, the City and Comm. Dotson was aware that its customs and policies were inadequate to properly supervise, investigate, train and discipline its officers regarding the use of excessive force.  Nevertheless, the City and Comm. Dotson maintained these inadequate customs and policies.

## COUNT I
### *42 U.S.C. § 1983 - First Amendment*
*(the County, Belmar, the City, Dotson, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, Ludwig, Becherer, Rossomanno, Joyner)*

120.     Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

121.     The County, Belmar, the City, Dotson, the City SWAT Defendants and the County SWAT Defendants violated Devereaux's and Hermsmeier's rights under the First Amendment to freedom of the press and freedom of speech by interfering with their ability to gather information and cover a matter of public interest as members of the media.

122.     Observing and recording public protests, and the police response to those protests, is a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

123.     The County, Belmar, the City, Dotson, the City SWAT Defendants and the County SWAT Defendants engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiffs' First Amendment rights.

124.     As a direct and proximate result of these unlawful actions, Plaintiffs Devereaux and Hermsmeier were damaged.

## COUNT II
### *42 U.S.C. § 1983 - First Amendment*
*(the County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting)*

125.     Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

126.     The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting violated Graw's and Herrmann's rights under the First Amendment to freedom of the press and freedom of speech by interfering with plaintiffs' ability to gather information and cover a matter of public interest as a member of the media.

127.     Observing and recording public protests, and the police response to those protests, is a legitimate means of gathering information for public dissemination that is protected by the freedom of speech and freedom of the press clauses of the First Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution.

128.     The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiffs' First Amendment rights.

129.     As a direct and proximate result of these unlawful actions, Plaintiffs Graw and Herrmann were damaged.

**COUNT III**
*42 U.S.C. § 1983 First Amendment Retaliation*
*(the County, Belmar, the City, Dotson, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor,*
*Dite, Newman, Hauck, Sparks, Ludwig, Becherer, Rossomanno, Joyner)*

130.     Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

131.     Devereaux's and Hermsmeier's speech, newsgathering, and recording of protest and police activity in Ferguson is protected activity under the First Amendment.

132.     The County, Belmar, the City, Dotson, the City SWAT Defendants and the
County SWAT Defendants arrest and/or use of force against Devereaux and Hermsmeier
was intended to deter and chill the exercise of their First Amendment rights.

133.     The County, Belmar, the City, Dotson, the City SWAT Defendants and the County
SWAT Defendants arrest and/or use of force against Devereaux and Hermsmeier was in
retaliation for Devereaux and Hermsmeier's exercise of their First Amendment rights.

134.     The County, Belmar, the City, Dotson, the City SWAT Defendants and the
County SWAT Defendants engaged in these unlawful actions willfully and knowingly,
acting with reckless or deliberate indifference to Plaintiffs' First Amendment rights.

135.  As a direct and proximate result of these unlawful actions, Plaintiffs Devereaux and
Hermsmeier were damaged.


## COUNT IV
*42 U.S.C. § 1983 First Amendment Retaliation*
*(the County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting)*

136.  Plaintiffs incorporate herein by reference the allegations made in each preceding
paragraph as if each were set forth here verbatim.

137.  Graw's and Herrmann's speech, newsgathering, and recording of protest and police
activity in Ferguson is protected activity under the First Amendment.

138.  The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting's
arrest and use of force against Graw and Herrmann was intended to deter and chill the
exercise of their First Amendment rights.

139.  The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting's arrest and use of force against Graw and Herrmann was in retaliation for Graw and Herrmann's exercise of their First Amendment rights.

140.  The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting engaged in these unlawful actions willfully and knowingly, acting with reckless or deliberate indifference to Plaintiffs' First Amendment rights.

141. As a direct and proximate result of these unlawful actions, Plaintiffs Graw and Herrmann were damaged.

## COUNT V
*42 U.S.C. § 1983 - Fourth Amendment*
*Search and Seizure*
*(the County, Belmar, the City, Dotson, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite,*
*Newman, Hauck, Sparks, Ludwig, Becherer, Rossomanno, Joyner)*

142.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

143.  Devereaux and Hermsmeier have a right under the Fourth Amendment to be free from unreasonable searches and seizures.

144. The County, Belmar, the City, Dotson, the City SWAT Defendants and the County SWAT Defendants violated Devereaux's and Hermsmeier's clearly established right to be free from unlawful searches and seizures when they arrested and detained them; and/or used excessive force; or failed to intervene in the use of excessive force, all without probable cause to believe they had engaged in criminal activity.

145. The County, Belmar, the City, Dotson, the City SWAT Defendants and the County SWAT Defendants engaged in these actions willfully and knowingly, acting with deliberate indifference to Devereaux's and Hermsmeier's Fourth Amendment rights.

146.  As a direct and proximate cause of these unlawful actions, Plaintiffs Devereaux and Hermsmeier were damaged.

**COUNT VI**
*42 U.S.C. § 1983 - Fourth Amendment*
*Search and Seizure*
*(the County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting)*

147.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

148.  Graw and Herrmann have a right under the Fourth Amendment to be free from unreasonable searches and seizures.

149.  The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting violated Graw's and Herrmann's clearly established right to be free from unlawful searches and seizures when they arrested and detained them; used excessive force; or failed to intervene in the use of excessive force, all without probable cause to believe that they had engaged in criminal activity.

150.  The County, Belmar, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting engaged in these actions willfully and knowingly, acting with deliberate indifference to Graw's and Herrmann's Fourth Amendment rights.

151.  As a direct and proximate cause of these unlawful actions, Plaintiffs Graw and Herrmann were damaged.

**COUNT VII**
*42 U.S.C. § 1983* and *Monell v. City of New York Dep't of Social Services*, 436 U.S. 658 (1978)
*Municipal Liability*
*(the County, Belmar)*

152.  Plaintiffs incorporate herein by reference the allegations made in each preceding

paragraph as if each were set forth here verbatim.

153.  The County and Belmar knew or should have known of their employees' propensity to engage in the illegal and wrongful acts that are the subject of this complaint.

154.  Prior to August 18, 2014, and since, the County developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in Ferguson and St. Louis County, which caused the violation of Plaintiffs' rights.

155.  At the time of Plaintiffs' arrest, it was the County's custom or policy to obstruct, prevent and retaliate against journalists and citizen journalists that were newsgathering, reporting, and recording police and protest activities in public locations, in violation of the First and Fourteenth Amendments.  This custom or policy was implemented by Belmar in his capacity as St. Louis County Chief of Police.

156.  Sergeant Pfanstiel and Captain Ludwig, involved in the arrest, detention, and excessive use of force against Devereaux and Hermsmeier, are supervisory County police officers and approved, condoned, or directed the unconstitutional conduct described herein.

157.  Sergeant Davis and Captain Fuesting, involved in the arrest, detention, and excessive use of force against Graw and Herrmann, are supervisory County police officers and approved, condoned, or directed the unconstitutional conduct described herein.

158.  At all times relevant to this complaint, the County and Belmar were aware that Defendant County Officers were inadequately trained regarding the First Amendment and Fourth Amendment.  Nevertheless, the County and Belmar maintained a custom or policy of failing to provide County police officers adequate training or supervision on the First Amendment and Fourth Amendment.

159. The County and Belmar have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal, and unconstitutional conduct of the individual County Defendants in this and in similar cases involving police misconduct.

160. The above-described customs and policies demonstrate deliberate indifference to the constitutional rights of persons within the County and Ferguson and caused the violation of Plaintiffs' rights alleged herein.

161. Plaintiffs intend to continue their careers as professional journalists photographing and reporting on newsworthy protests from public locations, including activities in St. Louis County, but fear further obstruction, harassment, and detention by the County's police officers. That fear makes it more difficult for them to gather news for dissemination to the public and interferes with them doing their job effectively.

162. As a direct and proximate result of acts and omissions of Belmar and the County, Plaintiffs sustained damages.

**COUNT VIII**
*42 U.S.C. § 1983* and *Monell v. City of New York Dep't of Social Services*, 436 U.S. 658 (1978)
*Municipal Liability*
*(the City, Dotson)*

163. Plaintiffs Devereaux and Hermsmeier incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

164. The City and Dotson knew or should have known of their employees' propensity to engage in the illegal and wrongful acts that are the subject of this complaint.

165. Prior to August 18, 2014, and since, the City and Dotson developed and maintained policies and customs exhibiting deliberate indifference to the constitutional rights of persons in Ferguson and St. Louis County, which caused the violation of Plaintiffs' rights.

166.  At the time of Devereaux and Hermsmeier's arrest, it was the City's custom or policy to obstruct, prevent and retaliate against journalists and citizen journalists that were newsgathering, reporting, and recording police and protest activities in public locations, in violation of the First and Fourteenth Amendments.  This custom or policy was implemented by Dotson in his capacity as St. Louis City Police Commissioner.

167. Lieutenant Joyner and Sergeant Rossomanno, involved in the excessive use of force against Devereaux and Hermsmeier were supervisory SLMPD officers and approved, condoned, or directed the unconstitutional conduct described herein.

168. At all times relevant to this complaint, the City and Dotson were aware that SLMPD officers, including Defendants Becherer, Rossomano, and Joyner, were inadequately trained regarding the First Amendment and Fourth Amendment.  Nevertheless, the City and Dotson maintained a custom or policy of failing to provide City police officers adequate training or supervision on the First Amendment and Fourth Amendment.

169. The City and Dotson have failed to take the steps to discipline, train, supervise or otherwise correct the improper, illegal, and unconstitutional conduct of the individual City Defendants in this and in similar cases involving police misconduct.

170. The above-described customs and policies demonstrate deliberate indifference to the constitutional rights of persons within the County and Ferguson and caused the violation of Plaintiffs Devereaux and Hermsmeier rights alleged herein.

171. Plaintiffs Devereaux and Hermsmeier intend to continue their careers as professional journalists photographing and reporting on newsworthy protests from public locations, including activities in St. Louis City, but fear further obstruction, harassment, and detention by the City's police officers.  That fear makes it more difficult for them to

gather news for dissemination to the public and interferes with them doing their job effectively.

172.  As a direct and proximate result of acts and omissions of Dotson and the City, Plaintiffs Devereaux and Hermsmeier sustained damages.

**COUNT IX**
*State Law Claim - Declaratory Judgment*
*(the County, Belmar, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck and Sparks, Ludwig, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting)*

173.  Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

174.  By reason of their conduct, Defendants County, Belmar, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, Ludwig, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting deprived Plaintiffs of their rights to freedom of speech under Article I, Section 8, of the Missouri Constitution; as well as  freedom from arrest without probable cause and unreasonable search and seizure, under Article I, Section 15, of the Missouri Constitution.

175.  Defendants County, Belmar, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, Ludwig, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting acted with reckless and callous indifference to Plaintiffs' rights under Article I, Sections 8 and 15, of the Missouri State Constitution. The unconstitutional policies and customs of St. Louis County, implemented by Belmar, were the moving force behind the individual County defendants' violation of Plaintiffs state constitutional rights.

176.  As a direct and proximate result of Defendants' actions, Plaintiffs sustained damages.

**COUNT X**
*State Law Claim - Declaratory Judgment*
*(the City, Dotson, Becherer, Rossomanno, Joyner)*

177. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

178. By reason of their conduct, Defendants City, Dotson, Becherer, Rossomanno, and Joyner deprived Plaintiffs Devereaux and Hermsmeier of their rights to freedom of speech under Article I, Section 8, of the Missouri Constitution; as well as freedom from unreasonable search and seizure, under Article I, Section 15, of the Missouri Constitution.

179. Defendants City, Dotson, Becherer, Rossomanno, and Joyner acted with reckless and callous indifference to Plaintiffs' rights under Article I, Sections 8 and 15, of the Missouri State Constitution. The unconstitutional policies and customs of St. Louis City, implemented by Dotson, were the moving force behind Defendants Becherer and Joyner's violation of Plaintiffs state constitutional rights.

180. As a direct and proximate result of Defendants' actions, Plaintiffs sustained damages.

**COUNT XI**
*State Law Claim - False Imprisonment*
*(the County, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck and Sparks, Ludwig)*

181. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

182. Defendant County Officers Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, and Ludwig knowingly restrained Plaintiffs Devereaux and Hermsmeier against their will and without legal justification.

183. Devereaux and Hermsmeier were confined for several hours, and their confinement was caused by these officers.

184. Defendant County Officers Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, and Ludwig intended to cause a confinement of Devereaux and Hermsmeier.

185. Devereaux and Hermsmeier were aware of their confinement by these officers.

186. At all times relevant to this complaint, Defendant County Officers Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck and Sparks, Ludwig were acting within the scope and course of their employment with the County and their actions were approved, consented to, and ratified by superior officers of the County acting within the scope of their employment.

187. Defendant County Officers Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, and Ludwig actions were a direct and proximate cause of the injury and harm suffered by Devereaux and Hermsmeier.

188. The County has waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.610.

## COUNT XII
*State Law Claim - False Imprisonment*
*(the County, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting)*

189. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

190. Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting knowingly restrained Plaintiffs Graw and Herrmann against their will and without legal justification.

191.  Graw and Herrmann were confined for several hours, and their confinement was caused by Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting.

192. Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting intended to cause a confinement of Graw and Herrmann.

193.  Graw and Herrmann were aware of their confinement by these officers.

194. At all times relevant to this complaint, Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting were acting within the scope and course of their employment with the County, and their actions were approved, consented to, and ratified by superior officers of the County acting within the scope of their employment.

195. Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting actions were a direct and proximate cause of the injury and harm suffered by Graw and Herrmann.

196. The County has waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.610.


**COUNT XIII**
*State Law Claim - Battery*
*(the County, Pfanstiel, Fumagalli, Zavorka, Miceli, Taylor, Dite, Newman, Hauck, Sparks, Ludwig)*

197. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

198. In the course of the County Officers' unlawful arrest of Devereaux and Hermsmeier, Defendant Sparks intentionally shot at and hit Devereaux and Hermsmeier with less-than-lethal projectiles.

199. In the course of the County Officers' unlawful arrest of Devereaux and Hermsmeier, Defendant Sparks, Hauck and/or another County SWAT Defendant, with the knowledge and approval of other officers present, intentionally used the plastic restraints on Devereaux and Hermsmeier to restrict and impair circulation and blood flow to their hands.

200. Devereaux and Hermsmeier did not consent to the unlawful offensive contact.

201. Devereaux and Hermsmeier sustained damages as a result of this intentional offensive contact.

202. Defendant Sparks, Hauck, and the County SWAT Defendants' actions were willful and wanton and showed a reckless indifference to the rights of others, including the rights of Devereaux and Hermsmeier.

203. The County SWAT Defendants used more force than was reasonably necessary to arrest Devereaux and Hermsmeier.

204. The County SWAT Defendants caused Devereaux and Hermsmeier bodily harm.

205. Devereaux and Hermsmeier found the physical contact offensive.

206. Any reasonable person would find the physical contact offensive.

207. At all times relevant to this complaint, the County SWAT Defendants were acting within the scope and course of their employment with the County and their actions were

approved, consented to, and ratified by superior officers of the County acting within the scope of their employment.

208. The County SWAT Defendants' actions were a direct and proximate cause of the physical harm suffered by Devereaux and Hermsmeier.

209. The County has waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.610.

## COUNT XIV
*State Law Claim - Battery*
*(the City, Becherer, Rossomano, Joyner)*

210. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

211. Without cause or provocation, Defendant Becherer, under the supervision, authority, and approval of Rossomano and Joyner, intentionally shot at and hit Devereaux and/or Hermsmeier with less-than-lethal projectiles.

212. Devereaux and Hermsmeier did not consent to the unlawful offensive contact.

213. Devereaux and Hermsmeier sustained damages as a result of this intentional offensive contact.

214. Defendants Becherer, Rossomano, and Joyner's actions were willful and wanton and showed a reckless indifference to the rights of others, including the rights of Devereaux and Hermsmeier.

215. Defendants Becherer, Rossomano, and Joyner caused Devereaux and/or Hermsmeier bodily harm.

216. Devereaux and Hermsmeier found the physical contact offensive.

217. Any reasonable person would find the physical contact offensive.

218. At all times relevant to this complaint, Defendants Becherer, Rossomano, and Joyner were acting within the scope and course of their employment with the City and their actions were approved, consented to, and ratified by superior officers of the City acting within the scope of their employment.

219. Defendants Becherer, Rossomano, and Joyner's actions were a direct and proximate cause of the physical harm suffered by Devereaux and Hermsmeier.

220. The City has waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.610.

**COUNT XV**
*State Law Claim - Battery*
*(the County, Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting)*

221. Plaintiffs incorporate herein by reference the allegations made in each preceding paragraph as if each were set forth here verbatim.

222. In the course of the unlawful arrest of Graw and Herrmann, one or more of Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting, with the knowledge and approval of other officers present, intentionally tightened the plastic restraints on Graw's and Herrmann's hands to restrict and impair circulation and blood flow to their hands.

223. Graw and Herrmann did not consent to this unlawful offensive contact by any of these Defendant County Officers.

224. Graw and Herrmann sustained damages as a result of this intentional offensive contact.

225.  These actions were willful and wanton and showed a reckless indifference to the rights of others, including the rights of Graw and Herrmann.

226.  County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting used more force than was reasonably necessary to arrest Graw and Herrmann.

227.  County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting caused Graw and Herrmann bodily harm.

228.  Graw and Herrmann found the physical contact offensive.

229.  A reasonable person would find the physical contact offensive.

230.  At all times relevant to this complaint, Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos, and Fuesting were acting within the scope and course of their employment with the County, and their actions were approved, consented to, and ratified by Lieutenant Fuesting and other superior officers of the County acting within the scope of their employment.

231.  Defendant County Officers Amaro, Davis, Rebholz, Zufall, McCauley, Dlugos and Fuesting's actions were a direct and proximate cause of the physical harm suffered by Graw and Herrmann.

232.  The County has waived claim to sovereign immunity by establishing some type of insurance coverage for their tortious conduct pursuant to Mo. Rev. Stat. § 71.185 and Mo. Rev. Stat. § 537.610.

## **Prayer for Relief**

WHEREFORE, Plaintiffs pray this Court:

A. Enter judgment in favor of Plaintiffs and against Defendants;

B. Issue injunctive relief enjoining Defendants from using illegal and unconstitutional means to prevent Plaintiffs and other members of the press access to policing activities in connection with public speech and assembly and to order such other injunctive relief as may be appropriate to prevent any future violations of federal and state law;

C. Issue a Declaratory Judgment that the Defendants willfully violated Plaintiffs' rights secured by federal and state law as alleged herein;

D. Award compensatory damages to Plaintiffs who have been damaged by the unlawful and/or unconstitutional actions of Defendants;

E. Award Plaintiffs punitive damages against Defendants;

F. Award Plaintiffs reasonable attorneys' fees and costs pursuant to 42 U.S.C. §§ 1983 and 1988; and

G. Allow such other and further relief as the Court deems just and proper.

Respectfully submitted,

By:  /s/ Corrine A. Irish

Corrine A. Irish
SQUIRE PATTON BOGGS (US) LLP
30 Rockefeller Plaza
New York, New York 10112
Tel: (212) 872-9800
Fax: (212) 872-9815
corrine.irish@squirepb.com
E.D. Mo. Bar No. 4289716NY

Steven Friedman (Ohio Bar #0060001)
SQUIRE PATTON BOGGS (US) LLP
4900 Key Tower
127 Public Square
Cleveland, Ohio 44114
Tel; 216-479-8500
Fax: 216-479-8780

steven.friedman@squirepb.com

Richard H. Sindel
SINDEL, SINDEL & NOBLE, P.C.
8000 Maryland Ave., Ste. 350
Clayton, MO 63105
(314) 721-6040
(314) 721-8545 Fax
(314) 799-7045 Cell
rsindel@sindellaw.com
*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that, on January 4, 2016, a copy of the foregoing

Plaintiffs' Second Amended Complaint were electronically filed with the Court using the

CM/ECF system, which sent notification to counsel of record.


<u>  /s/ Corrine A. Irish          </u>